```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/8/22
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------X
AVISHAI ABRAHAMI,                    :
                                     :
                    Plaintiff,       :
                                     :      No. 21 Civ. 10203 (JFK)
      -against-                      :
                                     :      **OPINION & ORDER**
MEISTER SEELING & FEIN LLP and       :
DANIEL J. DWYER.                     :
                                     :
                    Defendants.      :
------------------------------------X

APPEARANCES

FOR THE PLAINTIFF
     Michael Erik Sims & Stuart Alan Krause, ZEICHNER ELLMAN &
     KRAUSE LLP

FOR THE DEFENDANTS
     Lisa Lynn Shrewsberry, TRAUB LIEBERMAN STRAUS & SHREWSBURY
     LLP

**JOHN F. KEENAN, United States District Judge:**

      Before the Court is a joint motion by the Defendants

Meister Seeling & Fein, LLP and Daniel J. Dwyer (collectively,

"MSF") to dismiss Plaintiff Avishai Abrahami's ("Abrahami")

complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6),

or, alternatively, to stay this action pending the outcome of a

related New York state lawsuit and the resolution of a dispute

between Abrahami and a third-party regarding the release of

certain assignments that are currently held by MSF in escrow.

In his complaint, Abrahami asserts a single claim for legal

malpractice against MSF arising from the firm's representation

of him in connection with a $30 million loan, which is currently in default.  For the reasons set forth below, MSF's motion is DENIED.

## I. Background

### A. Factual Background

The Following facts are drawn from the Complaint, (ECF No. 1), and assumed to be true for purposes of this motion.  See Koch v. Christie's Int'l, PLC, 699 F.3d 141, 145 (2d Cir. 2012). Abrahami is a resident of Tel Aviv and the founder and Chief Executive Officer of Wix.com, an Israeli software company that provides website development services.  (Compl. ¶¶ 1, 14.) Defendant Meister Seeling & Fein, LLP, is a law firm and New York limited liability partnership.  (Id. ¶ 15.)  Defendant Daniel Dwyer is a New York resident and a partner at Meister Seeling & Fein.  (Id. ¶¶ 15, 16.)

In August 2020, Abrahami was approached about a "business opportunity" involving two companies within the HFZ Capital Group ("Borrowers"), a major New York City real estate development firm.  (Id. ¶ 2.)  The proposed transaction called for Abrahami to provide the Borrowers with a $30 million loan ("Loan"), which would be secured, in part, by the absolute assignment ("Assignments") of the Borrowers' ownership interests in three indirect subsidiaries owned by the Borrowers (the "LLC Interests").  (Id.)  The indirect subsidiaries owned three

warehouses in three different U.S. cities: Buffalo, New York,
Milwaukee, Wisconsin, and Nashville, Tennessee.  (Id. ¶¶ 2, 24.)
Abrahami believed, based on his understanding of the proposal,
that he would take ownership of the properties in the event the
Borrowers defaulted on the Loan.  (Id. ¶ 35.)

Abrahami retained MSF to represent him in connection with
the documentation of the proposed Loan.  (Id. ¶ 20.)  In order
to facilitate his communication with MSF in the United States,
Abrahami also retained an Israeli lawyer, Shachar Shimony
("Shimony").  (Id. ¶ 21.)  According to the Complaint, Shimony
communicated to MSF that it was "critical to Abrahami" that "he
be able to secure his collateral (the LLC Interests) as quickly
and easily as possible, without having to initiate legal
proceedings[,]" in the event "the Borrowers defaulted on the
Loan."  (Id. ¶ 27.)

As relevant here, the three warehouses at issue were
encumbered by preexisting first mortgages, each of which
prohibited subordinate financing.  (Id. ¶ 2; MSF's Mem. of L. at
6.)  To create the contemplated security interest in the
warehouses, the Loan called for the Assignments—i.e., the
Borrowers' equity interests in the three warehouses—to be placed
in escrow with MSF.  (Compl. ¶ 5.)  Under a separate escrow
agreement ("Escrow Agreement"), MSF agreed to hold the
Assignments in escrow as escrow agent and release them to

Abrahami if the Borrowers defaulted on the loan.  (Id.)  The release of the Assignments, according to MSF, would transfer ownership of the properties to Abrahami.  (Id. ¶¶ 2, 35.)

Prior to the execution of the Loan Agreement, Shimony exchanged several emails with MSF regarding the structure of the proposed deal.  (Id. ¶ 28.)  In an email dated August 27, 2020, Shimony asked MSF to "talk to [one of the principals of the Borrowers] and understand the procedure of getting control over the assets in a way which will enable [Abrahami] to sell them, repay the first mortgage to the bank and get the loan from the balance—al[l] the automatic way without the need to go to court and without HFZ's possibility to stop it."  (Id. ¶¶ 28, 29.) Shimony additionally asked for MSF's "opinion [as to] whether [] you think this is [a] customary security (in Israel [it] . . . won't work)."  (Id. ¶ 30.)  In response, MSF advised Shimony that the Assignments and Escrow Agreement "will act as security for the loan and will act as alternative to court action.  This structure will not require lender to resort to court to effect the transfer and will not require further action from borrower to be effective in the event of a default."  (Id. ¶ 31.)

In response to a second inquiry from Shimony, which again questioned whether the Loan Agreement provided adequate security for the Loan, MSF advised that:

4

> [T]he proposal is workable.  Other than from court they could not stop the sale of the assets. The biggest risk is the Senior Lender. A mortgage foreclosure would prevent any ability of our Lender to take control of the assets.
>
> Our Lender's protection will be to pay off the Senior Loan if necessary, to gain control of the assets. So long as Lender is prepared to pay off the senior loan in full (including any interest, penalties and fees required by the senior loan documents) Our lender can protect its collateral.[1]

(Id. ¶ 32.)  Shimony communicated MSF's analysis to Abrahami and, according to the Complaint, Abrahami relied on the advice when entering into the Loan Agreement.  (Id. ¶ 33.)  The Complaint further alleges that as a result of MSF's representations, Abrahami believed that the Loan Agreement gave him a security interest in the LLC Interests and that the deal provided him with a "straightforward and low risk means of securing possession of the LLC Interests . . . in the event the Borrowers defaulted."  (Id. ¶¶ 34, 35.)

On September 8, 2020, Abrahami executed the Loan Agreement and delivered the $30 million loan to the Borrowers.  (Id. ¶ 19.)  In accordance with the Loan Agreement, the Borrower's subsidiaries assigned to Abrahami their equity interests in the LLCs that owned the underlying real estate.  (Id. ¶¶ 22, 23,

---

[1] The "senior loan" refers to the first mortgage loans on the three properties.  (Id. ¶ 32.)

24.)  The Assignments were then placed in escrow with MSF.  (Id. ¶ 25.)

On November 25, 2020, MSF received a written notice ("the Notice") from Monroe Capital ("Monroe") concerning the loan. (Id. ¶ 38.)  The Notice informed MSF that Monroe held a senior lien on the Borrower's assets.  (Id. ¶ 7.)  The Notice stated that Monroe had previously loaned $43,466,019 to the Borrowers, dated October 30, 2018, and $113,500,000 to the Borrower's subsidiary, HFZ Capital Group LLC, dated October 20, 2017.[2]  (Id. ¶ 38.)  The Notice also asserted that: (1) Monroe's senior loans had been in default at the time Abrahami made his loan; (2) the senior loans did not permit the Borrowers to enter into the Loan with Abrahami; (3) the senior loans did not permit the Borrowers to assign the LLC Interests that were Abrahami's purported collateral; and (4) a public UCC sale of certain assets of the Borrowers—including, according to Monroe, the LLC Interests—was scheduled for December 2, 2020.  (Id. ¶ 8.)  MSF did not notify Abrahami about the Notice until December 18, 2020, two days after MSF received a second notice from Monroe informing it that Monroe had won the Borrowers' assets at the December 2, 2020, sale.  (Id. ¶¶ 41–43.)  The second notice expressly stated that

---

[2] In October 2018, Monroe filed Uniform Commercial Code-1 statements ("UCC-1 Statements) asserting a security interest in "all assets including proceeds and products" of the Borrowers.  (Id. ¶ 46.)

the sale included the LLC Interests that were the subject of the Assignments.  (Id. ¶ 43.)

On March 4, 2021, Abrahami notified the Borrowers that they were in default ("Default Notice") under the Loan Agreement as a result of (1) their failure to make required payments, and (2) their transfer, or purported transfer, of the LLC Interests. (Id. ¶ 53.)  The Borrowers did not respond to the Default Notice and, as of this writing, have not paid any amount under the Loan Agreement.  (Id. ¶ 54.)  On March 10, 2021, Abrahami submitted a letter to MSF demanding that MSF release the Assignments pursuant to the Escrow Agreement.  (Id. ¶ 54; ECF No. 19-15.) Monroe, in turn, issued a separate letter to MSF demanding that it refrain from releasing the Assignments to Abrahami.  (Id. ¶ 56.)  Monroe contends that the Assignments amounted to a fraudulent conveyance of its collateral and violated its loan agreement with the Borrowers.  (Id. ¶ 57.)  As of this writing, MSF has not released the assignments from escrow.  (Id. ¶ 58.)

Abrahami filed his Complaint in this action on December 1, 2021, alleging a single claim of legal malpractice against MSF. Abrahami contends that MSF breached its professional duty of care and committed legal malpractice by: (1) failing to provide Abrahami with proper legal advice in connection with the Loan, including advising that the Assignments provided him with a security interest in the LLC Interests, and not advising him

that the Assignments were susceptible to fraudulent conveyance claims; (2) assuring Abrahami that the escrow agreement would protect him in the event of a default; (3) failing to discover and inform Abrahami of Monroe's prior loans to the Borrowers; and (4) failing to notify Abrahami about, or take any action regarding, the November 25, 2020, Notice or the December 2, 2020, UCC sale.  (Id. ¶ 61.)  Abrahami contends that "[b]ut for [MSF's] negligence, [he] would not have made the Loan."  (Id. ¶ 62.)  Abrahami seeks damages of no less than $30 million, including expenses and damages related to mitigation, as well as attorney's fees and costs related to this action.  (Id. ¶ 63.)

### B. Procedural Background

On January 28, 2022, MSF filed the instant motion to dismiss Abrahami's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or alternatively, to stay this action pending resolution of: (1) a related lawsuit filed by Abrahami in New York state court against the principals of the Borrowers, Zeil Feldman ("Feldman") and Nir Meir ("Meir"); and (2) the dispute over the release of the Assignments held by MSF as escrow agent.  (MSF Mem. of Law, ECF No. 19.)  In a letter dated February 1, 2022, MSF requested that the Court extend the briefing schedule for the instant motion and stay discovery pending the motion's resolution.  (ECF No. 16.)  The Court granted MSF's extension request but declined to stay discovery.

(ECF No. 17.)   In accordance with the modified briefing schedule, Abrahami filed a Memorandum in Opposition to MSF's motion on February 18, 2022.   (Mem. in Opp's, ECF No. 22.)   MSF filed a Reply Brief on March 4, 2022.   (Reply, ECF No. 23.)   At the request of both parties, the Court held oral argument on the motion on March 9, 2022.

## II. Discussion

### A. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).   A claim is facially plausible when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   Id.   The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal" conduct.   Twombly, 550 U.S. at 545.   In considering a Rule 12(b)(6) motion, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and

9

facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence."  Heckman v. Town of Hempstead, 568 F. App'x 41, 43 (2d Cir. 2014).

**B. Analysis**

In the instant motion, MSF argues that Abrahami's Complaint fails to state a claim for legal malpractice under New York law. "To prevail on a legal malpractice claim in New York, a plaintiff must demonstrate 'that the attorney was negligent, that the negligence was a proximate cause of the injury and that [the plaintiff] suffered actual and ascertainable damages.'" Collins v. Felder, 785 F. App'x 8, 10 (2d Cir. 2019) (quoting Rubens v. Mason, 527 F.3d 252, 254-55 (2d Cir. 2008)).  For purposes of this motion, MSF does not dispute that the Complaint plausibly alleges negligence.[3]  Instead, MSF moves to dismiss the Complaint on the grounds that Abrahami has failed to adequately plead proximate cause and actual and ascertainable damages.  The Court addresses each argument in turn.

---

[3] In its motion, MSF states "[w]hile serious questions are raised concerning whether, under all the facts and circumstances (including the limited scope of MSF's engagement and the severe time constraints), the[] allegations [contained in the Complaint] establish that MSF breached the applicable standard of care . . . MSF recognizes that those fact intensive disputes are not properly decided on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)."  (MSF Mem. of Law at 17.)  MSF further states "[w]hether plaintiff has—or can—plausibly [] plead [proximate cause and actual and ascertainable damages] is the proper subject of a 12(b)(6) motion, and, indeed, plaintiff has not, and cannot, meet that heightened pleading standard."  (Id.) (emphasis added).

### 1. The Complaint Adequately Alleges Proximate Cause

To successfully plead proximate cause in a legal malpractice claim, a plaintiff "must plausibly allege that, but for the malpractice, the plaintiff would have received a more advantageous result, would have prevailed in the underlying action, or would not have sustained some actual and ascertainable damage." Prout v. Vladeck, 316 F. Supp. 3d 784, 799 (S.D.N.Y. 2018) (citing Schwartz v. Olshan Grundman Frome & Rosenzweig, 302 A.D.2d 193, 198 (1st Dep't 2003)).  It is well established that the causation requirement is "a high bar to attorney malpractice liability" and "seeks to insure a tight causal relationship exists between the claimed injuries and the alleged malpractice, and demands a nexus between loss and injury." Frankel v. McDonough, No. 10 Civ. 6106 (DAB), 2011 WL 5059181, at *4 (S.D.N.Y. Oct. 24, 2011) (quoting Flutie Bros. v. Hayes, No. 04 Civ. 4187, 2006 WL 1379594 at *4 (S.D.N.Y. 2006), aff'd, 471 F. App'x 67 (2d Cir. 2012)).  At the motion to dismiss stage, however, the plaintiff "need only allege, not prove, the proximate cause element of the legal malpractice claim." Even St. Prods., Ltd. v. Shkat Arrow Hafer & Weber, LLP, 643 F. Supp. 2d 317, 322 (S.D.N.Y. 2008).

MSF's primary argument in support of dismissal is that the Complaint fails to adequately allege a "tight casual relationship" between the alleged acts of malpractice and

Abrahami's damages.  (Reply at 2.)  As noted above, Abrahami
alleges that MSF breached its professional duty of care by (1)
failing to discover Monroe's prior loans to the Borrowers, (2)
failing to provide adequate legal advice regarding the validity
of the assignments, (3) incorrectly advising Abrahami that the
Escrow Agreement would prevent litigation over the collateral,
and (4) failing to notify Abrahami of the UCC sale of the
collateral.  In the instant motion, MSF contends that the
Complaint fails to plausibly allege that any of the alleged acts
of malpractice were the "but for" cause of Abrahami's loss.

MSF advances several arguments in support of this claim.
First, MSF argues that the Complaint fails to plausibly allege
that Abrahami would have refrained from entering the Loan
Agreement had he known about Monroe's prior loans to the
Borrowers.  According to MSF, Abrahami's allegations on this
point are "conclusory and speculative" and "fail[] to adequately
plead concrete facts showing that" the failure to discover
Monroe's prior loans was a "but for" cause of his alleged loss.
(Reply at 3, 7.)  MSF further argues that Abrahami is incapable
of establishing proximate cause in this case because he alleges
in his related New York state lawsuit that he made the Loan
"only after" receiving a personal guaranty ("Guaranty") from
Feldman and Meir.  According to MSF, Abrahami's allegation in
the state proceeding "negate[s] [his] assertion that some act or

omission by MSF proximately caused [him] actual and ascertainable damage."  (MSF Mem. of Law at 15.)  Finally, MSF contends that Abrahami cannot establish causation because he "engineered" the escrow dispute with Monroe.  The Court finds each of these arguments unavailing.

First, the Complaint adequately alleges that "but for the defendant's negligence, [Abrahami] . . . would not have sustained any damage."  Prout, 371 F. Supp. 3d at 156.  The Complaint alleges, and MSF does not dispute, that a UCC search of the Borrowers prior to the execution of the Loan Agreement would have revealed that Monroe filed a UCC-1 asserting a security interest in "all assets including proceeds and products" of the Borrowers in October 2018.  (Compl. ¶ 10.)  The Complaint also adequately alleges that "it was critical to Abrahami that the loan be secured by the promised collateral, and that . . . he be able to secure ownership and control of the collateral without having to initiate court action of his own." (Id. ¶ 2.)  Prior to the execution of the loan, Shimony communicated Abrahami's goals to MSF and repeatedly raised concerns about the structure of the proposed deal.  (Compl. ¶¶ 28-33.)  These allegations raise a reasonable inference that Abrahami would not have entered into the Loan Agreement had he known about Monroe's prior loans to the Borrowers.  "At this stage of the litigation, when a plaintiff is required only to

allege and not prove the proximate cause element of a legal malpractice claim . . . these allegations are sufficient to allege proximate cause."[4]  Applied Energetics, Inc. v. Stein Riso Mantel McDonough, LLP, No. 19 Civ. 1232 (AJN), 2020 WL 2833686, at *4 (S.D.N.Y. May 31, 2020) (citation omitted).

Second, Abrahami's allegation in the related New York state proceeding does not preclude him from establishing proximate cause in this case.  In New York, a plaintiff in a legal malpractice action "is not required to allege that [the] defendant['s] actions were the sole cause of its damages."

---

[4] Because the Court concludes that Abrahami has adequately alleged proximate cause, the Court does not consider MSF's arguments concerning the other theories of malpractice advanced in the Complaint.  See Applied Energetics, 2020 WL 2833686, at *4, n.2. Specifically, the Court does not consider MSF's arguments regarding the validity of the Assignments.  In its Reply Brief, MSF alleges that the Assignments remain valid and would transfer indirect ownership of the warehouses to Abrahami if released from escrow.  (Reply at 4.) The validity of the assignments, however, has no bearing on Abrahami's claim that "but for" MSF's negligence, he would not have entered the Loan Agreement.  Furthermore, as evidenced by MSF's submission of extrinsic evidence in support of its argument, any consideration of the validity of the Assignments would require the Court to delve into complicated issues of law and fact that cannot be resolved on a motion to dismiss.  See Gewecke v. US Bank N.A., No. 09 Civ. 1890 (JRT) (LIB), 2011 WL 4538083, at *13 (D. Minn. June 6, 2011) (concluding that "questions of whether the assignments were valid and whether they needed to be recovered . . . cannot be decided on the present motion to dismiss"), report and recommendation adopted sub nom. Gewecke v. U.S. Bank, N.A., No. 09 Civ. s1890 (JRT) (LIB), 2011 WL 4538088 (D. Minn. Sept. 29, 2011); see also Viesti Assocs., Inc. v. Pearson Educ., Inc., No. 12 Civ. 02240 (PAB), 2013 WL 4052024, at *5 (D. Colo. Aug. 12, 2013) ("The question of whether the assignments actually transfer ownership . . . necessarily requires an analysis of the language of the assignments and consideration of other relevant evidence on the merits, which the Court finds is not appropriate for a motion to dismiss.").

Neogenix Oncology, Inc. v. Gordon, 133 F. Supp. 3d 539, 551
(E.D.N.Y. 2015); see also Smartix Int'l Corp. v. Garrubbo,
Romankow & Capese, P.C., No. 06 Civ. 1501 (JGK), 2009 WL 857467,
at *4 (S.D.N.Y. Mar. 31, 2009) (noting that in New York "it is
not necessary to demonstrate sole causation in order to
demonstrate proximate or but-for causation").  In fact, "it is
well-settled that more than one offending party can be a but-for
cause of injury . . . ."  RocketFuel Blockchain Co. v. Ellenoff
Grossman & Schole LLP, No. 21 Civ. 1764 (VEC), 2022 WL 80482, at
*5 (S.D.N.Y. Jan. 7, 2022).  Accordingly, Abrahami's statement
that he made the loan "only after" receiving the Guaranty does
not undermine his claim that MSF's failure to discover Monroe's
prior loans was a "but for" cause of his loss.  See Comi v.
Breslin & Breslin, 257 A.D.2d 754, 756, 683 N.Y.S.2d 345 (3d
Dep't 1999) ("It is plausible that defendants' and the
[fraudulent actors'] actions and/or omissions, together, may
have contributed to plaintiff's alleged single injury.").
Furthermore, as Abrahami points out in his Memorandum in
Opposition, his allegation in the New York lawsuit is compatible
with his claim in the present case.  He argues that had he known
about Monroe's prior loans, he "would never [have] made the Loan
or needed or received the guaranty" in the first place.  (Opp'n
at 14-15.)

Finally, MSF's argument concerning the escrow dispute is improper at this stage of the litigation.  As noted above, MSF argues that Abrahami cannot establish proximate cause because he "engineered" the current escrow dispute with Monroe.  Citing emails exchanged between MSF attorneys and representatives of Abrahami, MSF argues that Abrahami purposely created the escrow dispute by (1) ignoring its request that he declare the Loan in default and demand the release of the Assignments in January 2021; and (2) "unnecessary[ily]" informing Monroe about the default in March 2021 "so [Monroe] would make a first-in-time competing demand" for the Assignments.  (MSF Mem. of Law at 23.) As soon as Monroe learned about the default, it submitted a letter to MSF demanding that the Assignments not be released, arguing that the Assignments amounted to "fraudulent conveyances" and that it had a superior competing interest in the collateral.  (Id.; Compl. ¶ 57.)  MSF contends that because Monroe's competing demand has prevented it from releasing the Assignments to Abrahami, it cannot be held liable for any injuries Abrahami has sustained as a result of his inability to take the Assignments.

MSF's claim that Abrahami acted in bad faith, however, is predicated entirely on emails attached as exhibits to its motion to dismiss.  In the context of a motion to dismiss, a court "may consider the facts alleged in the complaint, documents attached

16

to the complaint as exhibits, and documents incorporated by reference in the complaint." <u>DiFolco v. MSNBC Cable L.L.C.</u>, 622 F.3d 104, 111 (2d Cir. 2010). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." <u>Id.</u> (quoting <u>Mangiafico v. Blumenthal</u>, 471 F.3d 391, 398 (2d Cir. 2006)). "For a document to be considered integral to the complaint, the plaintiff must rely on the terms and effect of a document in drafting the complaint; mere notice or possession is not enough." <u>United States of America ex rel. Foreman v. AECOM</u>, 19 F.4th 85, 106 (2d Cir. 2021) (internal quotation and citations omitted).

Here, the emails cited by MSF are not incorporated into the Complaint by reference and no argument can be made that Abrahami "rel[ied] on the terms and effect of [the emails] in drafting" the Complaint. <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002). MSF argues that the Court should consider the emails because they were in Abrahami's possession when the Complaint was filed and they "demonstrate the blatant falsity" of Abrahami's allegations. (Oral Argument Transcript 9:14-19.) "[M]ere notice or possession" of the emails, however, "is not enough" to render them "integral" to the Complaint. <u>Chambers</u>, 282 F.3d at 153; <u>see also</u> <u>DeLuca v. AccessIT Group, Inc.</u>, 695 F.

Supp. 2d 54, 60 (S.D.N.Y. 2010) (concluding that documents in plaintiff's possession were not integral to the Complaint because the plaintiff did not "rel[y] on the documents in framing his complaint"). Accordingly, the Court cannot consider the emails and declines to address MSF's argument that Abrahami instigated the escrow dispute. See DiFolco, 622 F.3d at 113 (concluding district court erred in considering an email that "was not attached to the complaint, was not incorporated by reference in the complaint, and was not integral to the complaint").

### 2. The Complaint Adequately Alleges Damages

MSF's second argument in support of dismissal is that the Complaint fails to plausibly allege "actual and ascertainable damages." As noted previously, Abrahami argues that he has suffered damages in the form of "the unpaid amount of the loan . . . as well as all the costs, expenses, and attorneys' fees needed to pursue such collection." (Mem. in Oppo. at 6.) MSF avers that Abrahami cannot adequately allege actual and ascertainable damages because his New York state lawsuit against the Guarantors is ongoing, and he has not independently attempted to resolve his dispute with Monroe. In response, Abrahami argues that the possibility he may recover some money from the Guarantors or take possession of the Assignments has

18

"no bearing on [his] current loss, or his right to proceed against" MSF.  (Id. at 16.)   The Court agrees with Abrahami.

Under New York law, a legal malpractice claim accrues "when the malpractice is committed," Shumsky v. Eisenstein, 96 N.Y.2d 164, 166 (2001), not when "the damages develop or become quantifiable or certain," Woodson ex rel. Woodson v. Am. Transit Ins. Co., No. 104008/96, 808 N.Y.S.2d 921 (Sup. Ct. 2005). Furthermore, a plaintiff may file a legal malpractice claim even though the true measure of damages depends on the outcome of a separate proceeding.  See Lopez v. Lozner & Mastropietro, P.C., 88 N.Y.S.3d 554, 556 (2d Dep't 2018) (holding that a plaintiff was "entitled to commence [a] legal malpractice action" arising out of the litigation of a personal injury claim "even though the underlying personal injury action was still pending, as the legal malpractice action accrued at the time of the attorney's challenged action"); see also Johnston v. Raskin, 598 N.Y.S.2d 272, 272 (2d Dep't 1993) (concluding trial court erred in dismissing claim as "premature" because "plaintiff could commence her action although her damages were, as yet, unconfirmed").

Here, the Complaint plausibly alleges that Abrahami has suffered actual and ascertainable damages as a result of MSF's alleged malpractice, including its failure to discover Monroe's prior loans.  The damages include, as Abrahami correctly argues,

19

his present loss of $30 million and the costs associated with his lawsuit against the Guarantors and his ongoing escrow dispute with Monroe.  The possibility that Abrahami may recover against the Guarantors does not prevent him from proceeding against MSF.  See Groisman v. Goldberg & Rimberg PLLC, No. 18 Civ. 7989 (JPO), 2019 WL 2616903, at *3 (S.D.N.Y. June 26, 2019) (holding that a plaintiff in a legal malpractice action had "alleged the requisite injury, even [though] the measure of damages—or whether [plaintiff] will suffer any money damages at all—is yet uncertain").  Accordingly, the factual allegations contained in the Complaint are sufficient to allege actual damages and survive a motion to dismiss.

For the reasons set forth above, the Court concludes that the Complaint, construed in a light most favorable to Abrahami, plausibly states a claim for legal malpractice.  MSF's motion to dismiss is therefore denied.

### 3. A Stay is Not Warranted

Having concluded that the Complaint survives the instant motion, the Court turns to MSF's alternative request that the Court stay this action pending the resolution of Abrahami's lawsuit against the Guarantors and his escrow dispute with Monroe.  MSF specifically argues that a stay in this case is warranted under the five-factor test articulated in Kappel v. Comfort, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996).  The Kappel

factors include: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." LaSala v. Needham & Co., 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005) (citing Kappel, 914 F. Supp. at 1058).  MSF argues that a stay is appropriate because it would be "unduly burdensome" to "force[]" it to defend this action while Abrahami's lawsuit against the Guarantors remains unresolved.  (MSF Mem. of Law at 24.)

In response, Abrahami argues that because MSF's stay request is based on the pendency of a related state court action, it is governed by the abstention doctrine of Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976), not the five-factor test of Kappel.  Abrahami further argues that a stay in this case is not warranted under Colorado River and its progeny.  In its Reply Brief, MSF did not address the applicability of Colorado River abstention and instead simply argued that Abrahami incorrectly "ignores the five factors upon which [the stay] request is based."  (Reply at 9.)

"The Second Circuit has made it clear that the Colorado River doctrine governs motions to stay . . . where the basis of

the motion is the pendency of a potentially dispositive concurrent state court case." Harris v. TD Ameritrade, Inc., No. 17 Civ. 6033 (LTS), 2018 WL 1157802, at *5 (S.D.N.Y. Feb. 14, 2018) (citing Vill. of Westfield v. Welch's, 170 F.3d 116, 121 (2d Cir. 1999)); see also SST Global Tech., LLC v. Chapman, 270 F. Supp. 2d 444, 455 (S.D.N.Y. 2003) (noting that motions "to stay proceedings in a federal action based on the existence of a concurrently pending state civil action . . . [are] governed by the principles of federal abstention doctrine"). Conversely, the five-factor test "used in Kappel has been applied to stay a federal action in light of a concurrently pending federal action (either because the claim arises from the same nucleus of facts or because the pending action would resolve a controlling point of law)." Chapman, 270 F. Supp. 2d at 454-55 (emphasis in original); see also CC/Devas (Mauritius) Ltd. v. Air India, Ltd., No. 21 Civ. 5601 (PGG), 2022 WL 355759, at *7 (S.D.N.Y. Feb. 4, 2022) (noting courts in this Circuit look to Kappel when considering "whether to stay a duplicative federal suit . . ."). Here, because MSF's stay request is based on the pendency of Abrahami's earlier-filed civil action in state court, the Colorado River doctrine applies.

Under the doctrine, a district court may, in certain "exceptional circumstances," abstain from exercising jurisdiction "when parallel state-court litigation could result

in 'comprehensive disposition of litigation' and abstention
would conserve judicial resources."  Niagara Mohawk Power Corp.
v. Hudson River-Black River Regulating Dist., 673 F.3d 84, 100
(2d Cir. 2012) (quoting Colorado River, 424 U.S. at 817-18).
"In deciding whether to abstain under the Colorado River
doctrine, a district court must first determine whether the
federal and state court cases are parallel."  U.S. Bank Nat'l
Ass'n as trustee Bank of Am., N.A. v. E. Fordham DE LLC, 804 F.
App'x 106, 107 (2d Cir. 2020).  Lawsuits are parallel if
"substantially the same parties are contemporaneously litigating
substantially the same issue in both forums."  First Keystone
Consultants Inc. v. Schelsinger Elec. Contractors, 862 F. Supp.
2d 170, 182 (E.D.N.Y. 2012).  While "[c]omplete identity of
parties and claims is not required[,]" GBA Contracting Corp. v.
Fid. & Deposit Co., No. 00 Civ. 1333 (KAM), 2001 WL 11060, at *1
(S.D.N.Y. Jan. 3, 2001), the two actions must be "essentially
the same," Shields v. Murdoch, 891 F. Supp. 2d 567, 577
(S.D.N.Y. 2012).

     If the federal and state actions are parallel, Colorado
River requires the Court to consider six factors:

     (1) the assumption of jurisdiction by either court
     over any res or property; (2) the inconvenience of the
     federal forum; (3) the avoidance of piecemeal
     litigation; (4) the order in which jurisdiction was
     obtained; (5) whether state or federal law supplies
     the rule of decision; and (6) whether the state court

proceeding will adequately protect the rights of the
party seeking to invoke federal jurisdiction.

E. Fordham DE LLC, 804 F. App'x at 107 (citing De Cisneros
v. Younger, 871 F.2d 305, 307 (2d Cir. 1989)).  "No single
factor is necessarily decisive, and the weight to be given
to any one factor may vary greatly from case to case,
depending on the particular setting of the case."  Kaplan
v. Reed Smith LLP, 919 F.3d 154, 158 (2d Cir. 2019)
(citation omitted).

Here, although Abrahami's federal and state actions are
based on the same core facts, a stay is not warranted under
Colorado River because the cases are not parallel.  As an
initial matter, the two proceedings do not involve the same
parties.  See Aurelius Capital Master, Inc. v. MBIA Ins. Corp.,
695 F. Supp. 2d 68, 73 (S.D.N.Y. 2010) (holding Colorado River
abstention is unwarranted without "a substantial identity of
parties between the federal and state actions"); see also Gudge
v. 109 Rest. Corp., 118 F. Supp. 3d 543, 548 (E.D.N.Y. 2015)
(concluding that federal and state actions were not parallel in
part because "[p]laintiff here is not a plaintiff in the state
case; nor are those plaintiffs in this case").  Additionally,
the issues being litigated in the two cases are dissimilar.  As
discussed extensively above, the focus of this action is whether
or not MSF breached its professional duty of care and, if so,

whether its breach proximately caused Abrahami's loss.  By contrast, Abrahami's state court action involves a breach of contract claim against the Guarantors based on their alleged failure to comply with the terms of the Guarantee Agreement. Where, as here, "the nature of the claims in question differs, cases are not parallel despite the fact that both actions arise out of a similar set of circumstances."  DDR Const. Servs., Inc. v. Siemens Indus., Inc., 770 F. Supp. 2d 627, 645 (S.D.N.Y. 2011) (internal quotation marks and citation omitted).

Finally, there is not "a substantial likelihood that the state litigation will dispose of all claims presented in the federal case."  Courchevel 1850 LLC v. 464 Ovington LLC, No. 16 Civ. 7185 (NGG), 2019 WL 1492347, at *3 (E.D.N.Y. Mar. 31, 2019) (emphasis added).  Even if Abrahami were to prevail against the Guarantors and recover his entire $30 million loss, the factfinder in this case would still need to determine whether MSF is liable for the expenses Abrahami has incurred as a result of the default.  Accordingly, the two cases are not parallel for purposes of Colorado River abstention.  See Id. at *4 (concluding that state and federal cases are not parallel "[b]ecause the single claim at issue [in the federal case] will not be addressed by the [s]tate [p]roceeding").

Even if the cases were parallel, the six Colorado River factors weigh against imposing a stay.  First, this case is not

an in rem action and neither this Court nor the New York state court has assumed jurisdiction over any res or property.  See Woodford v. Cmty Action Agency of Greene County, 239 F.3d 517, 522 (2d Cir. 2001) ("[W]ith respect to the first Colorado River factor, 'the absence of a res point[s] toward exercise of federal jurisdiction.'" (quoting Vill. of Westfield v. Welch's, 170 F.3d 116, 122 (2d Cir. 1999))).  Second, in light of the fact that the state and federal courthouses are located on the same block, the federal forum is "just as convenient" as the state forum.  Vill. of Westfield, 170 F.3d at 122.

The third factor—the avoidance of piecemeal litigation—also weighs against imposing a stay.  MSF, in support of its claim that a stay is warranted under Kappel, argues that there is "a potential for inconsistent results here" because Abrahami may recover his full $30 million loss in the state case.  (MSF Mem. of Law at 24.)  The mere "risk of inconsistent results alone[,]" however, "will not outweigh the heavy presumption against abstention.  This is particularly true where [the defendant] has not in fact been joined to the state action[] and may never be if the federal court retains jurisdiction."  In re Asbestos Litig., 963 F. Supp. 247, 253 (S.D.N.Y. 1997).  Because MSF is not a party to Abrahami's state action and the resolution of that case will not resolve all of the issues presented here, abstention is unlikely to minimize the risk of piecemeal

litigation.  See Bethlehem Contracting Co. v. Lehrer/McGovern, Inc., 800 F.2d 325, 328 (2d Cir. 1986) (concluding piecemeal litigation is unlikely where the defendant "is named as an individual defendant only in the federal suit . . . [and the] federal suit raises a cause of action in tort against [the defendant] that has no counterpart in the state litigation"). Finally, neither the fifth nor sixth factors support imposing a stay because Abrahami's legal malpractice claim involves questions of state law and "there is no concern that [his] federal rights may be compromised." Nat'l Cas. Co. v. Jordache Enterprises, Inc., 848 F. Supp. 1112, 1116 (S.D.N.Y. 1994); see also Arkwright-Bos. Mfrs. Mut. Ins. Co. v. City of New York, 762 F.2d 205, 211 (2d Cir. 1985) ("As all diversity suits raise issues of state law, their presence does not weigh heavily in favor of surrender of jurisdiction.").

In sum, the Court concludes that the "exceptional circumstances" required for abstention under Colorado River are not present in this case.  See Vill. of Westfield, 170 F.3d at 124.  Accordingly, even if the federal and state actions were parallel, a stay would not be warranted.  MSF's alternative request for a stay is therefore denied.

## III. Conclusion

For the reasons set forth above, MSF's motion to dismiss the Complaint (ECF No. 18) is DENIED.  The Clerk of the Court is

27

respectfully directed to terminate the motion docketed at ECF

No. 18.  The parties are ORDERED to submit to the Court, within

thirty days, a proposed deadline for all discovery.

**SO ORDERED.**

Dated:   New York, New York

         June 8, 2022

John F. Keenan

United States District Judge